IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| In re ) | |
| ) | |
| 107 EAST 25TH STREET, LLC, ) | Case No. 10-13146-RAG |
| ) | (Chapter 11) |
| Debtor. ) | |

**PLAN OF REORGANIZATION OF 107 EAST 25TH STREET, LLC**

107 East 25th Street, LLC ("107 East 25th" or the "Debtor") proposes the following plan of reorganization pursuant to the provisions of chapter 11 of title 11 of the United States Code.

## ARTICLE I

## DEFINITIONS

1.0     For purposes of this Plan, the following terms shall have the meanings set forth unless the context clearly requires otherwise.

1.1     "Administrative Expense" means (a) an unsecured claim, not otherwise defined in the Plan, entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code and includes, but is not limited to, (i) a claim for any cost or expense of administration in connection with this chapter 11 case, including, without limitation, any actual, necessary cost or expense of preserving the Debtor's estate and of operating the business of the Debtor, (ii) the full amount of all claims for compensation for legal, accounting and other professional services or reimbursement of costs under sections 330, 331 or 503 of the Bankruptcy Code, (iii) all fees and charges assessed against the Debtor's estate under section 1930 of title 28 of the United States Code, and (iv) any post-petition taxes and related items, including any interest and penalties on

such post-petition taxes, or (b) compensation for legal, accounting and other professional services or reimbursement of costs arising from post-confirmation services rendered in connection with the Debtor's bankruptcy cases or in connection with this Plan and incident to such cases.

1.2     "Allowed Claim" means a claim (a) with respect to which a proof of claim was filed with the Bankruptcy Court on or before the Bar Date, or pursuant to section 8.2 of the Plan, or (b) which is listed in the schedules filed by the Debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure and is not listed as disputed, contingent or unliquidated as to amount; and which is not a Disputed Claim or an Administrative Expense. If only a portion of a claim is a Disputed Claim, the remainder shall be an Allowed Claim if the claim otherwise complies with (a) or (b) above. In the event that a proof of claim has been filed in an amount less than the undisputed, noncontingent amount set forth in the schedules of the Debtor, then, absent an objection, the amount set forth in the proof of claim shall constitute the amount of the Allowed Claim.

1.3     "Avoidable Transfers" means any transfer of property of the Debtor that may be avoided pursuant applicable law, including but not limited to sections 544 through 550 of the Bankruptcy Code.

1.4     "Bankruptcy Code" or "Code" means the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 *et seq*.

1.5     "Bankruptcy Court" or "Court" means (a) the United States Bankruptcy Court for the District of Maryland, or such other court as may have jurisdiction over this case, or (b) any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

1.6     "Bar Date" means with respect to a governmental unit, August 17, 2010,

and with respect to all other creditors, June 22, 2010.

  1.7 "Business Day" means a day, which is not a Saturday, Sunday or legal holiday as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

  1.8 "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

  1.9 "Collateral" means property of the Debtor, which secures a Secured Claim.

  1.10 "Confirmation" means the entry of an order by the Court confirming the Plan.

  1.11 "Confirmation Date" means the date upon which the Court enters the Confirmation Order.

  1.12 "Confirmation Order" means the order entered by the Court confirming the Plan.

  1.13 "Consent Order" means the Stipulation and Consent Order Granting Branch Banking and Trust Company Relief from the Automatic Stay and Adequate Protection and Providing for Forbearance entered May 4, 2010.

  1.14 "Debtor" means 107 East 25th Street, LLC.

  1.15 "Disclosure Statement" means the disclosure statement relating to this Plan filed by the Debtor pursuant to section 1125 of the Bankruptcy Code, either as initially filed or as it may be altered, amended or modified as permitted by law.

  1.16 "Disputed Claim" means any claim or portion of a claim regarding which either the Debtor or other party has filed a pleading, motion or other paper (regardless of how such is denominated) with the Court (a) disputing the correctness of the amount, priority, secured status or other matter regarding the claim or portion of the claim or (b) seeking disallowance of

all or a portion of the claim, and which has not been fixed by a Final Order.

    1.17    "Distribution Account" means the account or accounts established by the Debtor pursuant to section 7.1 of the Plan.

    1.18    "Effective Date" means the fifteenth day after the Confirmation Date; unless prior to that date, the effect of the Confirmation Order is stayed, in which case the Effective Date shall be the fifteenth day following the termination of such stay.

    1.19    "General Claim" means any prepetition claim against the Debtor which is unsecured, not entitled to priority under the Bankruptcy Code and not otherwise classified in the Plan.

    1.20    "Executory Contract" means any contract or unexpired lease to which the Debtor is a party and which is executory within the meaning of section 365 of the Bankruptcy Code; except that a lease of personal property whose lessor holds a Secured Claim is <u>not</u> an Executory Contract.

    1.21    "Final Order" means an order or judgment, the operation or effect of which has not been stayed, and as to which order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek an appeal or review has expired, and as to which no appeal, petition for review or motion for leave to appeal has been taken or made or is pending.

    1.22    "Plan" means this Plan of Reorganization dated April ___, 2010, either in its present form or as it may be altered, amended or modified as permitted by law.

    1.23    "Proceeds" means the net amount, in whatever form, received by the Debtor from the sale or other disposition of property after payment of all expenses (including any professional fees) associated with such sale or disposition.

    1.24    "Professional" means any entity retained or to be compensated pursuant to

sections 326, 327, 328, 330 or 331 of the Bankruptcy Code.

      1.25    "Pro Rata" means, with respect to a distribution to a holder of a claim, a payment equal to (A) the total amount available for distribution multiplied by (B) the amount of such holder's claim divided by (C) the total amount of claims (both Allowed and Disputed) to receive a distribution from a particular source of funds (A x B ÷ C).

      1.26    "Real Property" means the land and buildings located at 107 East 25th Street, Baltimore, MD 21218, titled in the name of the Debtor.

      1.27    "Secured Claim" means any claim secured by a lien, mortgage, security interest, or other encumbrance on property of the Debtor, but only to the extent of the value of the Debtor's interest in property securing such claim, and only to the extent that such lien, mortgage, security interest or other encumbrance is not void or voidable under applicable state or federal law, including the Bankruptcy Code, or subject to setoff under section 553 of the Bankruptcy Code.  Classification of a claim in this Plan as a "Secured Claim" is not an admission or representation that the holder of such claim actually holds a Secured Claim.  Such classification merely defines the treatment of the Secured Claim should it be found to exist.  However, classification in this Plan as other than a Secured Claim shall conclusively exclude such claim from treatment as a Secured Claim.  "Secured Claim" includes the claim of a lessor under a lease of personal property if (a) the lessor agrees to treatment of its claim as a Secured Claim, (b) the lessor has filed a proof of claim asserting a secured claim, (c) the Debtor obtains an order of the Court recharacterizing the personal property lease as a secured financing transaction, or (d) the Plan treats the lessor's claim as a Secured Claim.

      1.28    "Tax Claim" means an unsecured claim for taxes owing to a governmental entity entitled to priority pursuant to section 507 the Bankruptcy Code.

5

1.29    "Unclassified Claim" means any claim belonging to a class of claims not requiring designation pursuant to section 1123(a)(1) of the Bankruptcy Code.

1.30    Unless otherwise defined herein, the terms used in the Plan shall have the meaning(s) ascribed to them in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

2.0    Pursuant to section 1123(a)(1) of the Bankruptcy Code, claims of a kind specified in sections 507(a)(2), 507(a)(3) and 507(a)(8) of the Bankruptcy Code are not designated as classes for voting purposes.

2.1    Unless a holder of an Administrative Expense agrees to less favorable treatment, and except as stated elsewhere in the Plan, all Administrative Expenses accrued and unpaid as of the Effective Date shall be paid in full in Cash on the tenth Business Day after, at the Debtor's discretion, (a) the Effective Date or (b) the date such claim has been allowed pursuant to a Final Order of the Court; provided, however, that (x) Administrative Expenses incurred in the ordinary course of business may be paid in the ordinary course of business, (y) the fees, costs and disbursements of Professionals approved by the Court shall be paid in full on the later of the Effective Date or the tenth day after the entry of an order allowing such payment and (z) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the tenth Business Day after the Debtor's receipt of an invoice therefor.

2.2    Unless a holder of a Tax Claim agrees to less favorable treatment, each holders of a Tax Claim which is an Allowed Claim shall receive on or before the first anniversary of the Effective Date the allowed amount of its claim together with interest from the Effective

Date at the rate of six percent.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1  Claims of the Debtor's creditors and interests in 107 East 25th Street, LLC are divided into classes as follows. The identification of a class of claims or interests in this Plan does not imply that claims in such class exist, in fact.

Class 1:  Secured Claim of the City of Baltimore for taxes and other municipal charges.

Class 2:  Secured Claim of Branch Banking and Trust Company ("BB&T").

Class 3:  General Claims.

Class 4:  Membership interests in 107 East 25th Street, LLC.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

4.0  With respect to an Allowed Claim, the holder of such claim shall receive on account of such claim property as set forth below. With respect to a Disputed Claim, the date on which the holder of such claim shall receive property shall be the later of the date set forth below or the tenth Business Day following the resolution of such claim by a Final Order. With respect to all claims, except as retained in this Plan, all contracts and instruments and all rights and remedies stated in any contract or instrument to which either Debtor is a party are cancelled (except Executory Contracts assumed under this Plan); creditors have only the rights and remedies set forth in this Plan.

4.1  Class 1: Unless the holder of the Class 1 claims agrees to less favorable treatment or the lien or security interest of Baltimore City is avoided, the holder of the Class 1

7

claim shall receive at the closing (or as soon thereafter as the settlement agent can deliver the funds) on any sale or refinancing of the Real Property the full amount of its Allowed Claim, including interest and penalties accrued to the date of payment. The holder of the Class 1 claims shall retain its lien on the Real Property until receipt of payment satisfying the Allowed Claim in full. The Class 1 claim is not impaired under the Plan.

       4.2       Class 2: Unless the holder of the Class 2 claims agrees to less favorable treatment, the holder of the Class 2 claim shall receive at the closing (or as soon thereafter as the settlement agent can deliver the funds) on any sale or refinancing of the Real Property the full amount of its Allowed Claim, including interest and charges accrued to the date of payment. The holder of the Class 2 claims shall retain its lien on the Real Property until receipt of payment satisfying the Allowed Claim in full. Notwithstanding the provisions of section 4.0 of this Plan, the Holder of the Class 2 claim shall retain all its contractual rights as modified by the Consent Order. The Class 2 claim is impaired under the Plan.

       4.3       Class 3: Unless a holder of a Class 3 claim agrees to less favorable treatment, each holder of a Class 3 Allowed Claim shall receive such holder's Pro Rata share of distributions from the Distribution Account, in accordance with Article VII of the Plan, until either (a) such holder has received 100 percent of the Allowed Claim or (b) the Distribution Account is without further assets to distribute. No holder of a Class 3 Claim shall receive a distribution greater than the amount of such holder's Allowed Claim. Class 3 claims are impaired under the Plan.

       4.4       Class 4: Unless a holder of a Class 4 interest agrees to less favorable treatment, each holder of the Class 4 interest shall retain his/her interest in 107 East 25th Street, LLC. Class 4 interests are not impaired under the Plan.

## ARTICLE V

## FUNDING OF PAYMENTS

5.1     Payments required to be made to the holders of the Class 1 claim and the Class 2 claim shall be made by the Debtor from Proceeds from the sale or refinancing of the Real Property.

5.2     Funds for payments, if any, into the Distribution Account shall come from (a) the Proceeds from the sale or refinancing of the Real Property remaining after payment of the Class 1 and the Class 2 claims and (b) any other funds that are received by the Debtor.

5.3     The Debtor may prepay at any time without penalty any of the obligations to (a) pay holders of Allowed Claims or (b) make deposits into the Distribution Account.

## ARTICLE VI

## DISPOSITION OF ASSETS

6.1     Until completion of the payments required by the Plan, all sales or other dispositions of property of the Debtor's estate and the making or delivery of an instrument of transfer with respect to any such sale or disposition may not be taxed under any law imposing a stamp tax or similar tax.

6.2     Until completion of the payments required by the Plan, all sales or other disposition of property of the Debtor shall be free and clear of all liens, security interests, claims and other rights of creditors, which liens, security interests, claims and other rights shall attach to the Proceeds, if any, of such disposition, except as otherwise provided in the Plan or further order of the Court.

6.3     All entities claiming a lien, security interest, or other interests in property sold or otherwise disposed of pursuant to the Plan shall execute such documents as

reasonably are requested by the Debtor to evidence the release of such lien, claim or security interest on the property.

## ARTICLE VII

## THE DISTRIBUTION ACCOUNT AND PAYMENT OF CLAIMS

7.1     On the date of the closing of any sale or refinancing of the Real Property, the Debtor shall open an account to be entitled the "107 East 25th Creditor Distribution Account". The Debtor shall deposit into the Distribution Account the funds stated in Article V of the Plan.

7.2     Not later than 30 days following closing of the sale or refinancing of the Real Property, the Debtor shall distribute to holders of Allowed Claims or interests entitled to participate in such distribution pursuant to Article IV of the Plan a Pro Rata distribution of all funds in the Distribution Account, less all reserves permitted under the Plan.

7.3     The Debtor may reserve from the Distribution Account sufficient funds to pay the anticipated professional expenses incurred and to be incurred in the discharge of the Debtor's duties set forth in the Plan and amounts necessary to keep the Distribution Account open.

7.4     Wherever the Plan requires payment in full of a particular class of claims, including Administrative Expenses, as a prerequisite to any payment of another class of claims, the Debtor may satisfy such condition by reserving the full amount sought by the holder(s) of such claim(s) for distribution, if required, at a later date.

7.5     Each time the Debtor makes a distribution from the Distribution Account in accordance with the provisions of the Plan, the Debtor shall calculate the Pro Rata distribution to each creditor on the assumption that all Disputed Claims are allowed in the full

10

amount claimed and shall reserve in a separate account the Pro Rata distribution allocable to such Disputed Claims.

    7.6    Upon resolution of a Disputed Claim by a Final Order, the holder of such formerly Disputed Claim shall receive that portion of the funds previously reserved on account of such Disputed Claim determined by the following formula: (A) the amount previously reserved on account of such Disputed Claim multiplied by (B) the amount of the Disputed Claim allowed by the Final Order divided by (C) the original amount of the Disputed Claim ($A \times B \div C$). Funds previously reserved on account of such Disputed Claim in excess of the amounts required to be paid to the holder of such Disputed Claim upon resolution thereof shall be returned to the Distribution Account.

    7.7    Notwithstanding any other provision of the Plan, but at the election of the Debtor, no unsecured creditor holding a note or other instrument evidencing a claim of such creditor against either Debtor may receive any distribution with respect to such creditor's claim unless and until such instrument has been surrendered to the Debtor.

    7.8    If a creditor is unable to surrender an instrument evidencing a claim against the Debtor because such instrument has been lost or destroyed, the creditor may receive a distribution to which it is otherwise entitled under the Plan on account of such claim by presenting in form acceptable to the Debtor: (a) adequate evidence of such creditor's prior possession of such instrument; (b) an affidavit of the loss or destruction of such instrument and the claimant's inability to locate it; and (c) such indemnification as may be required by the Debtor from any loss, action, suit, or claim which may be made as a result of such creditor's receipt of distribution under the Plan.

    7.9    Except as to payments made by the settlement agent from any closing

on the sale or refinancing of the Real Property, distributions to holders of Allowed Claims and Administrative Expenses shall be made by first class mail to the address of each claim holder as set forth on, in order of priority: (a) the most recent notice of address delivered by such claim holder to the Debtor; (b) the most recent proof of claim filed by such claim holder; (c) the Schedules of Assets and Liabilities filed by the Debtor in accordance with Rule 1007 of the Federal Rules of Bankruptcy Procedure; or (d) the Debtor's books and records.

   7.10  If a distribution to a claim holder is returned to the Debtor as undeliverable, no further distribution shall be made to such claim holder unless and until the Debtor receive notification in writing of the correct, current address of such claim holder. Monies which would otherwise be distributed to such claim holder shall be held by the Debtor in the Distribution Account, or any separate account which the Debtor may, in its sole discretion, choose to open, until the earlier of (a) the time such distribution becomes deliverable or (b) the time such distribution is treated as unclaimed in accordance with section 7.11.

   7.11  Any distribution to a claim holder which the Debtor is unable to make, through no fault of the Debtor, within six months following the date of attempted distribution shall be redistributed to other holders of claims. Any claim holder whose distribution is redistributed to others pursuant to this section, shall be deemed conclusively to have waived and relinquished all rights to distribution pursuant to the Plan and shall have no further claim against Debtor or the estate.

   7.12  No distribution in an amount less than five dollars shall be distributed from the Distribution Account to any creditor. Funds not distributed pursuant to this section shall be treated as unclaimed in accordance with section 7.11.

   7.12  All funds remaining in the Distribution Account after payment of the

full amount of the Allowed Claims of creditors shall be distributed to the Debtor and may be used by the Debtor for any lawful purpose.

## ARTICLE VIII

### EXECUTORY CONTRACTS

8.1 Any Executory Contract not previously rejected by the Debtor or for which a motion seeking approval or rejection is not pending shall be assumed by the Debtor as of the Effective Date.

8.2 Each claim arising from the rejection of an Executory Contract for which a proof of claim is not filed with the Court and a copy of such proof of claim is not received by the Debtor on or before the thirtieth day after the date of such rejection shall not be an Allowed Claim. A claim arising from the rejection of an Executory Contract shall not become an Allowed Claim (provided that it is otherwise within the definition of "Allowed Claim") until 30 days after it is filed.

8.3 If an Executory Contract pursuant to which the Debtor leased equipment is rejected, the owner of such equipment shall take physical possession of the equipment within ten Business Days after the later of (a) the Effective Date or (b) the date the rejection of the lease is approved by the Bankruptcy Court. Any previously leased equipment of which the owner does not take possession within ten Business Days after the Effective Date may be disposed of by the Debtor. The owner of such equipment shall reimburse the Debtor for the full cost of such disposal. If any leased equipment is not in possession of the Debtor, the Debtor shall cooperate with the owner's efforts to take possession of the equipment, but the Debtor shall not be required to turn over possession of the equipment.

## ARTICLE IX

## ABANDONMENT OF PROPERTY

9.1 Except as may be provided in any order entered by the Bankruptcy Court, the Debtor does not abandon any property.

## ARTICLE X

## MODIFICATION OF PLAN

10.1 The Debtor may modify this Plan at any time before the Confirmation Date but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code.

10.2 The Debtor may modify this Plan at any time after the Confirmation Date and before substantial consummation of this Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code.

10.3 Before or after Confirmation, or in the Confirmation Order, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or amend the Plan, in such manner as may be necessary to carry out the purposes and intent of the Plan.

## ARTICLE XI

## DISCHARGE

11.1     Upon confirmation of this Plan, the Debtor shall be discharged to the extent provided for by section 1141 of the Bankruptcy Code from any and all claims. Notwithstanding the provisions of section 1141(d)(3) of the Bankruptcy Code, no creditor may seek or obtain payment from the Debtor or property of the Debtor of such creditor's claim, except in accordance with this Plan.

## ARTICLE XII

## VESTING OF PROPERTY IN THE DEBTOR

12.1     On the Confirmation Date, title to all property of the estate shall revest in the Debtor free and clear of all claims, except as set forth in this Plan.

12.2     All creditors are enjoined from commencing or continuing any action, employment of process or act to collect or recover any claim from property of the estate which revests in the Debtor pursuant to this Article, except as set forth in this Plan.

## ARTICLE XIII

## RETENTION OF JURISDICTION

13.1     The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan, to determine the allowance of compensation to Professionals, to determine all controversies relating to Avoidable Transfers, to determine motions for assumption of Executory Contracts and to determine claims resulting therefrom, to determine disputes as to the classification or allowance of claims or interests, to enforce the provisions of the Plan, to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the

15

Plan, to resolve any dispute between or among any of the parties to this Chapter 11 case, and to determine such other matters as may be set forth in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code.

## ARTICLE XIV

## GENERAL PROVISIONS

14.1     Timing.   If under this Plan an act is required to occur on a date which is not a Business Day, such act shall occur on the next following Business Day.

14.2     Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland.

14.3     Successors and Assigns.  The rights and obligations of the Debtor, each creditor and any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors, assigns and transferees of such entity.

14.4     Completion of Administration.  This Plan will be deemed fully administered under Rule 3022 of the Federal Rules of Bankruptcy Procedure on the later of (a) the first Business Day falling after payments under the Plan have commenced or (b) the tenth day after all motions, contested matters, and adversary proceedings have been resolved by Final Order.

Dated: May 5, 2010

                                                        107 EAST 25TH STREET, LLC

                                         By: */s/ Richard A. Burnham*
                                                Richard A. Burnham, Member

                                         By: */s/ Clara A. Burnham*
                                                Clara A. Burnham, Member

*/s/James C. Olson* .
James C. Olson (07973)
10451 Mill Run Circle
Suite 400
Owings Mills, MD 21117
(410) 356-8852
jcolson@msn.com

Attorney for 107 East 25th Street, LLC

05000

17