IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| 107 EAST 25TH STREET, LLC, | ) | Case No. 10-13146-RAG |
| | ) | (Chapter 11) |
| Debtor. | ) | |

# DISCLOSURE STATEMENT REGARDING PLAN OF REORGANIZATION PROPOSED BY 107 EAST 25TH STREET, LLC

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION PROPOSED BY 107 EAST 25TH, L.L.C.  PLEASE READ THIS DOCUMENT CAREFULLY.

May 5, 2010

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

    Purpose of the Disclosure Statement ........................................................................1
    Voting Instructions and Confirmation of the Plan....................................................2
    Confirmation of the Plan With and Without Necessary Acceptances .....................2

HISTORY OF THE DEBTOR AND
EVENTS LEADING TO THE CHAPTER 11 CASE...........................................................2

SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE .......................................3

    Marketing of Real Property ......................................................................................3
    BB&T's Motion for Stay Relief ................................................................................3

SUMMARY OF THE PLAN .................................................................................................4

    Class One ..................................................................................................................4
    Class Two..................................................................................................................4
    Class Three ...............................................................................................................5
    Class Four .................................................................................................................5
    Administrative Expenses ..........................................................................................5
    Tax Claims ................................................................................................................6
    Executory Contracts .................................................................................................6

MEANS FOR EXECUTION OF THE PLAN......................................................................6

    Assets of the Estate ..................................................................................................6
    Post-Confirmation Business Operations..................................................................6
    The Distribution Account and Payment of Unsecured Claims................................7

ALTERNATIVES TO THE PLAN .......................................................................................7

TAX CONSEQUENCES........................................................................................................8

CONCLUSION........................................................................................................................9

GLOSSARY OF DEFINITIONS .........................................................................................10

107 East 25th Street, LLC ("107 East 25th" or the "Debtor"[1]) submits the following Disclosure Statement pursuant to the provisions of chapter 11 of title 11 of the United States Code.

## INTRODUCTION

**Purpose of the Disclosure Statement**

Pursuant to section 1125 of the Bankruptcy Code, the purpose of a Disclosure Statement is to provide information that will enable a hypothetical reasonable investor, typical of the classes of claim holders and interest holders whose claims and interests are being solicited, to make an informed judgment about the Plan. The Debtor is providing this Disclosure Statement to each person holding a claim or interest so that each such person can make an informed judgment whether to vote to accept or reject the Plan. The material contained in this Disclosure Statement is intended solely for that purpose. The Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan, and nothing contained in the Plan or Disclosure Statement constitutes an admission of any fact or liability by any party.

The information contained in this Disclosure Statement has been assembled by the Debtor from the books and records of 107 East 25th, publicly filed documents, and information gathered by the Debtor's attorneys. No representations concerning the Debtor or the Plan are authorized by the Debtor other than as set forth in this Disclosure Statement. Any representations or inducements to secure your vote other than those contained in this document should not be relied on.

The Debtor has tried to make this Disclosure Statement accurate in all material respects. However, the Debtor is not able to warrant that the information contained in this Disclosure Statement is without any inaccuracy. The financial information contained in this Disclosure Statement has not been subject to a certified audit.

**The Court will hold a hearing on confirmation of the Plan beginning at _____ __.m. on _____, 2010, at the United States Bankruptcy Court for the District of Maryland, 101 West Lombard Street, Courtroom 9-D, Baltimore, Maryland 21201.** At that hearing, the Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether the Plan is feasible and whether it is in the best interests of the creditors and interest holders of the Debtor. The Court will at that hearing also receive and consider a ballot report concerning the votes cast for acceptance or rejection of the Plan.

**Voting Instructions and Confirmation of the Plan**

Before voting, you should read this Disclosure Statement, as well as the Plan, in their entirety. You should use only the ballot sent to you with this Disclosure Statement to cast your vote for or against the Plan. You should complete, date and sign your ballot and return it in person or by mail to James C. Olson, Esquire, 10451 Mill Run Circle, Suite 400, Owings Mills, Maryland 21117. **All ballots must be received by 5:00 p.m. on _____, 2010.** Only

---

[1] Capitalized terms have the meanings stated in the Glossary of Definitions found at the end of this Disclosure Statement

1

those votes that actually accept or reject the Plan may be counted.

An impaired class of claims[2] accepts the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims of that class which are actually voted are cast in favor of the Plan.  Holders of Allowed Claims who do not vote are not counted as having voted either for or against the Plan.

**Confirmation of the Plan With and Without Necessary Acceptances**

Once it is determined which impaired classes have or have not accepted the Plan, the Court will determine whether the Plan may be confirmed.  If all impaired classes accept the Plan and the Court finds that the other conditions set forth in section 1129(a) of the Bankruptcy Code are met, the Plan will be confirmed.

The Plan may be confirmed even if it is not accepted by all impaired classes, if the Court finds that at least one impaired class of claims has accepted the Plan and certain additional conditions are met.  Those conditions are set forth in section 1129(b) of the Code.  The Debtors intend to rely upon the provisions of section 1129(b) of the Code, if one or more impaired classes do not accept the Plan.

## HISTORY OF THE DEBTOR AND EVENTS
## LEADING TO THE CHAPTER 11 CASES

107 East 25th was formed in July 2006 for the purpose of owning a three-story commercial building located at 107 East 25th Street, Baltimore, MD 21218 ("Real Property").  107 East 25th is a limited liability corporation whose members are Richard A. Burnham and Clara A. Burnham.  The Property is partially occupied by Graphic Imaging, Inc., a specialty printing company also owned by Mr. and Mrs. Burnham.

On August 9, 2006, the Debtor borrowed $348,000 from Branch Banking and Trust Company ("BB&T"), the repayment of which was secured by a deed of trust encumbering the Real Property.  On August 9, 2006, the Graphic Imaging, Inc. borrowed $50,000 from BB&T, the repayment of which was guaranteed by the Debtor and secured by an indemnity deed of trust encumbering the Real Property.

In early 2009, the Debtor fell three months behind in its payments to BB&T due to the effects of the recession on the income of Graphic Imaging, the Debtor's sole tenant at that time.  Negotiations with BB&T were not successful in achieving BB&T's forbearance.  As a result, BB&T commenced an action to foreclose the Debtor's equity of redemption in the Real Property.  The foreclosure sale was scheduled on February 18, 2010, at 2:30 p.m.

107 East 25th filed its petition for relief under Chapter 11 of the Bankruptcy Code on the morning of February 18, 2010, prior to commencement of the foreclosure sale.

---

[2] Whether a class of claims or interests is "impaired" is determined in accordance with § 1124 of the Code.  The section of this Disclosure Statement entitled "Summary of the Plan" sets forth the classes of claims that are impaired under the Plan.  A class that is not impaired under a Plan is conclusively presumed to have accepted the Plan.  Solicitation of acceptances from unimpaired classes is not required.

2

## SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

### Marketing of Real Property

Prior to the filing of its Chapter 11 petition, 107 East 25th engaged MacKenzie Commercial Real Estate Services, LLC ("MacKenzie") to market and sell the Real Property. The debtor's initial asking price was $725,000.

Subsequently, shortly after commencement of this case, on February 26, 2010, the Debtor filed an application to retain MacKenzie as the Debtor's real estate broker in this Chapter 11 case on the same terms and conditions. That application was granted by order entered March 22, 2010.

Active marketing of the Property has continued throughout this bankruptcy case. In order to increase interest and speed the sale, the Debtor reduced the asking price to $650,000. Eighteen parties have made inquiries with either the broker or the debtor and ten of these parties have visited the Real Property. The Debtor and MacKenzie are in communication with five potential purchasers that have expressed a strong interest in the Real Property.

Moreover, the Debtor and MacKenzie continue to work actively to market the Real Property. The Real Property is listed on MacKenzie's web site, on a commercial list engine and a multiple listing service. Direct email has been used to bring the Real Property to the attention of brokers and lenders. The Debtor has prepared and distributed a professionally designed brochure to selected individuals and companies that would be most likely users of this type of building. The Debtor is also promoting the sale on Face book and in printed notices and web pages in the Charles Village and Locust Point areas.

### BB&T's Motion for Stay Relief

On March 3, 2010, BB&T filed a motion seeking relief from the automatic stay in order to recommence its foreclosure of the Property. The Debtor filed its opposition to BB&T's motion, asserting that BB&T was adequately protected by a substantial equity cushion.

The stay relief motion was settled by a consent order entered May 4, 2010 ("Consent Order"). Pursuant to the terms of the Consent Order, BB&T has obtained relief from the automatic stay and has agreed to forbear from enforcing its remedies until September 30, 2010, provided that the Debtor makes monthly payments in the amount of $3,341.08 commencing April 2010, maintains adequate property insurance, pays future real estate taxes and complies with other conditions set forth in the order. The terms of the Consent Order are incorporated in the Plan.

**SUMMARY OF THE PLAN**

The Summary of the Plan contained in this Disclosure Statement is not a substitute for, and is qualified by, the full text of the Plan itself. A copy of the Plan accompanies this Disclosure Statement. If confirmed, the Plan creates binding obligations between the Debtor and its creditors. If any conflict should arise between the contents of the Plan and (1) the description of the Plan contained in this Disclosure Statement or (2) any other statement contained in this Disclosure Statement, the terms of the Plan govern the rights and obligations of the parties. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN CAREFULLY. The Debtor believes that the Plan is feasible, fair and equitable, does not discriminate unfairly and is in the best interest of creditors.

The Plan provides for division of the Debtor's creditors and interest holders into four separate classes. In addition, the Plan treats two categories of claims (Administrative Expenses and Tax Claims) which do not vote and are referred to as "Unclassified Claims". The designation of a class or a category or unclassified claims does not mean that the Debtor is aware of any actual claimants in such class or category. The disclosure of the amount of a class of claims or the amount of a particular claim does not mean that the Debtor agrees with the amounts claimed.

**Class One**

Class 1 consists of the secured claim of the City of Baltimore for real property taxes and other municipal charges that are secured by a first lien on the Property. A Secured Claim is any claim secured by a lien, mortgage, security interest or other encumbrance on property of the Debtors, but only to the extent of the value of the Collateral. *See* Glossary of Definitions. Where the debt to a particular creditor exceeds the value of the Collateral, that creditor holds both a Secured Claim in the amount of the value of the Collateral and an unsecured claim for the deficiency.

Unless the holder of the Class 1 claim agrees to less favorable treatment, the holder of the Class 1 claim shall receive at the closing (or as soon thereafter as the settlement agent can deliver the funds) on any sale or refinancing of the Real Property the full amount of its Allowed Claim, including interest and penalties accrued to the date of payment. The holder of the Class 1 claim shall retain its lien on the Real Property until receipt of payment satisfying the Allowed Claim in full. The Class 1 claim is not impaired under the Plan

**Class Two**

Class 2 consists of the secured claim of BB&T. BB&T has filed a proof of claim asserting a secured claim in the amount of $478,211.85 as of February 18, 2010, with interest accruing at a per diem rate of $122.26. Payments made by the Debtor to BB&T pursuant to the consent order are credited to reduce the amount of the loan balance. As of May 7, 2010, the Debtor will have paid BB&T $6,682.16 pursuant to the Consent Order.

Unless the holder of the Class 2 claim agrees to less favorable treatment, the holder of the Class 2 claim shall receive at the closing (or as soon thereafter as the settlement agent can deliver the funds) on any sale or refinancing of the Real Property the full amount of its Allowed Claim,

including interest and charges accrued to the date of payment. The holder of the Class 2 claim shall retain its lien on the Real Property until receipt of payment satisfying the Allowed Claim in full. Notwithstanding the provisions of section 4.0 of the Plan, the Holder of the Class 2 claim shall retain all its contractual rights as modified by the Consent Order. The Class 2 claim is impaired under the Plan.

**Class Three**

Class 3 consists of General Claims. General Claims are unsecured claims arising before the filing date of 107 East 25th's Chapter 11 petition, which are not entitled to a priority under the Bankruptcy Code and are not otherwise classified under the Plan. "General Claim" may include those portions of the claims of creditors holding security in excess of the value of the Collateral.

To the best of the Debtor's knowledge, there are no General Claims.

Unless a holder of a Class 3 claim agrees to less favorable treatment, each holder of a Class 3 Allowed Claim shall receive such holder's Pro Rata share of distributions from the Distribution Account, in accordance with Article VII of the Plan, until either (a) such holder has received 100 percent of the Allowed Claim or (b) the Distribution Account is without further assets to distribute. No holder of a Class 3 Claim shall receive a distribution greater than the amount of such holder's Allowed Claim. Class 3 claims are impaired under the Plan.

**Class Four**

Class 4 consists of the membership interests in 107 East 25th, L.L.C. The Debtor has two members, Richard A. Burnham and Clara A. Burnham, each of whom owns a 50 percent interest. Unless a member agrees to less favorable treatment, s/he shall retain his/her interest in 107 East 25th Street, LLC. Class 4 interests are not impaired under the Plan.

**Administrative Expenses**

Administrative Expenses are claims arising after the commencement of 107 East 25th's Chapter 11 case which are entitled to a priority of payment under the Bankruptcy Code. *See* Glossary of Definitions.

Unless a holder of an Administrative Expense agrees to less favorable treatment, and except as stated elsewhere in the Plan, all Administrative Expenses accrued and unpaid as of the Effective Date shall be paid in full in Cash on the tenth Business Day after, at the Debtors' discretion, (a) the Effective Date or (b) the date such claim has been allowed pursuant to a Final Order of the Court; provided, however, that (x) Administrative Expenses incurred in the ordinary course of business may be paid in the ordinary course of business, (y) the fees, costs and disbursements of Professionals approved by the Court shall be paid in full on the later of the Effective Date or the tenth day after the entry of an order allowing such payment and (z) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the tenth Business Day after the Debtors' receipt of an invoice therefor.

Administrative Expenses of the estate consist of professional fees incurred by the Debtor

5

and fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6). The Debtor's estimate of the Administrative Expenses as of the Confirmation Date is:

| Administrative Expense | Amount |
| --- | --- |
| 107 East 25th's Attorney | $12,500.00 |
| U.S. Trustee fees | $700.00 |

**Tax Claims**

Tax Claims consist of allowed unsecured claims of governmental units for certain types of taxes, including income, property, excise tax and employment taxes, which arose prior to February 18, 2010. *See* Glossary of Definitions.

Unless a holder of a Tax Claim agrees to less favorable treatment, 107 East 25th will pay to each holder of a Tax Claim the allowed amount of its claim with interest at 6 percent, on or before the first anniversary of the Effective Date.

As a Limited Liability Company, 107 East 25th is not liable for income taxes, which pass through to the members of the Debtor. The real estate taxes owed by the Debtor are a secured claim treated in Class 1. The Debtor is not aware of any Tax Claims.

**Executory Contracts**

Currently, the Debtor is a party to an oral lease of the Real Property to Graphic Imaging, Inc., an affiliate, as tenant. The Plan provides that, as of the Effective Date, the Debtor assumes all Executory Contracts, unless the contract has been rejected prior to the Confirmation Date or a motion to approve rejection of a contract is pending on the Confirmation Date. 107 East 25th does not anticipate that it will seek to reject any Executory Contract.

## MEANS FOR EXECUTION OF THE PLAN

**Assets of the Estates**

107 East 25th's assets consist solely of the Real Property. According the Scheduled of Assets filed by the Debtor in this case, the value of the Real Property is $725,000. However, subsequent to the commencement of this Chapter 11 case, the Debtor reduced its asking price for sale of the Real Property to $650,000 in order to stimulate greater interest on the part of potential purchasers.

**Post-Confirmation Business Operations**

Subsequent to confirmation of the Plan, the Debtor will continue its efforts to sell the Real Property, while maintaining Graphic Imaging as a tenant until such time as the building is sold. Pursuant to section 1146(c) of the Bankruptcy Code, sale of the Real Property will be free of transfer taxes.

All sales or other disposition of property of the Debtor will be free and clear of all liens, security interests, claims and other rights of creditors, which rights will attach to the proceeds, if any, of such disposition, except as otherwise provided in the Plan.

**The Distribution Account and Payment of Unsecured Claims**

On the date of the closing of any sale or refinancing of the Real Property, the Debtor will open an account to be entitled the "107 East 25th Creditor Distribution Account". The Debtor will deposit into the Distribution Account the net proceeds from sale of the Real Property, after payment of the Allowed Secured Claims.

Not later than 30 days following closing of the sale or refinancing of the Real Property, the Debtor shall distribute to holders of Allowed Claims or interests entitled to participate in such distribution pursuant to the Plan a Pro Rata distribution of all funds in the Distribution Account, less all reserves permitted under the Plan.

Proceeds from the recovery of any Avoidable Transfers will also be deposited into the Distribution Account. The Debtor is not currently aware of any Avoidable Transfers.

The Debtor will reserve from the Distribution Account sufficient funds to pay the anticipated expenses incurred and to be incurred in the discharge of its duties set forth in the Plan, including reserving funds for taxes, if any, which may be become due. Wherever the Plan requires payment in full of a particular class of claims, including Administrative Expenses, as a prerequisite to any payment of another class of claims, the Debtor may satisfy such condition by reserving the full amount sought by the holder(s) of such claim(s) for distribution, if required, at a later date.

If a distribution to a claim holder is returned to the Debtor as undeliverable, no further distribution will be made to such claim holder unless and until the Debtor receives notification in writing of the correct, current address of such claim holder. The Debtor is not required to attempt to locate any claim holder. If the Debtor is unable to deliver such distribution within six months following the final sale or other disposition of property of the Debtor, the funds will be redistributed to other creditors. Additionally, the Debtor is not required to distribute an amount less than five dollars to any single creditor.

## ALTERNATIVES TO THE PLAN

The alternatives to confirmation of the Plan, or to confirmation of some other plan of reorganization should the Plan not be confirmed, are the dismissal of this reorganization case (leaving the Debtor's creditors and shareholders to pursue their non-bankruptcy remedies, if any) or the liquidation of the Debtor in Chapter 7.

Dismissal of this case would likely result in a foreclosure by BB&T of the Debtor's interest in the Real Property. This method of liquidation of the Debtor's sole asset is likely to result in a substantial reduction in the realized value of the Real Property, to the detriment of BB&T and the members of the Debtor. The Debtor does not believe that the Real Property will

likely command a sufficiently high price at a foreclosure sale to satisfy the Debtor's obligations to BB&T.

The other alternative is the conversion of the case to a liquidation case under Chapter 7 of the Bankruptcy Code.

As previously discussed, 107 East 25th's sole asset, the Real Property, is encumbered by the liens of Baltimore City and BB&T. Although the Debtor's Schedule A values the Real Property at $725,000, the forced sale inherent in a Chapter 7 case means that a trustee is likely to recover far less. There is also the possibility that a trustee would abandon the Real Property, and BB&T would recommence its foreclosure proceeding, leading to the results stated above.

Based upon the foregoing, the Debtor believes that the value distributed to creditors under the Plan is greater than the value that creditors would receive through an alternative to the Plan.

## TAX CONSEQUENCES

Implementation or non-implementation of the Plan may modify or affect the timing of the federal income tax treatment of the claims or interests of the Debtor's creditors or interest holders. In addition, state or federal tax consequences may flow from the Plan, depending on the creditor's or interest holder's state of residence. Differences among creditors or interest holders, including differences in form of organization, methods of accounting and prior tax-related actions taken with respect to their claims or interests, may have a material effect on the tax treatment of their involvement. Creditors and shareholders are urged to consult their tax advisors concerning the tax consequences of the Plan to them.

**CONCLUSION**

The Debtor believes that the proposed Plan is feasible, fair and equitable, does not discriminate unfairly, and is in the best interest of creditors.

Dated: May 5, 2010

                107 EAST 25TH STREET, LLC


                By: */s/ Richard A. Burnham*
                    Richard A. Burnham, Member


                By: */s/ Clara A. Burnham*
                    Clara A. Burnham, Member



*/s/ James C. Olson* .
James C. Olson (07973)
10451 Mill Run Circle
Suite 400
Owings Mills, MD 21117
(410) 356-8852
jcolson@msn.com

Attorney for 107 East 25th Street, LLC


05008

9

**GLOSSARY OF DEFINITIONS**

For purposes of this Disclosure Statement, the following terms have the meanings set forth unless the context clearly requires otherwise.

"Administrative Expense" means (a) an unsecured claim, not otherwise defined in the Plan, entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code and includes, but is not limited to, (i) a claim for any cost or expense of administration in connection with this chapter 11 case, including, without limitation, any actual, necessary cost or expense of preserving the Debtor's estate and of operating the business of the Debtor, (ii) the full amount of all claims for compensation for legal, accounting and other professional services or reimbursement of costs under sections 330, 331 or 503 of the Bankruptcy Code, (iii) all fees and charges assessed against the Debtor's estate under section 1930 of title 28 of the United States Code, and (iv) any post-petition taxes and related items, including any interest and penalties on such post-petition taxes, or (b) compensation for legal, accounting and other professional services or reimbursement of costs arising from post-confirmation services rendered in connection with the Debtor's bankruptcy cases or in connection with this Plan and incident to such cases.

"Allowed Claim" means a claim (a) with respect to which a proof of claim was filed with the Bankruptcy Court on or before the Bar Date, or pursuant to section 8.2 of the Plan, or (b) which is listed in the schedules filed by the Debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure and is not listed as disputed, contingent or unliquidated as to amount; and which is not a Disputed Claim or an Administrative Expense.  If only a portion of a claim is a Disputed Claim, the remainder shall be an Allowed Claim if the claim otherwise complies with (a) or (b) above.  In the event that a proof of claim has been filed in an amount less than the undisputed, noncontingent amount set forth in the schedules of the Debtor, then, absent an objection, the amount set forth in the proof of claim shall constitute the amount of the Allowed Claim.

"Avoidable Transfers" means any transfer of property of the Debtor that may be avoided pursuant applicable law, including but not limited to sections 544 through 550 of the Bankruptcy Code.

"Bankruptcy Code" or "Code" means the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 *et seq*.

"Bankruptcy Court" or "Court" means (a) the United States Bankruptcy Court for the District of Maryland, or such other court as may have jurisdiction over this case, or (b) any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

"Bar Date" means with respect to a governmental unit, August 17, 2010, and with respect to all other creditors, June 22, 2010.

"Business Day" means a day, which is not a Saturday, Sunday or legal holiday as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

"Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

"Collateral" means property of the Debtor, which secures a Secured Claim.

"Confirmation" means the entry of an order by the Court confirming the Plan.

"Confirmation Date" means the date upon which the Court enters the Confirmation Order.

"Confirmation Order" means the order entered by the Court confirming the Plan.

"Consent Order" means the Stipulation and Consent Order Granting Branch Banking and Trust Company Relief from the Automatic Stay and Adequate Protection and Providing for Forbearance entered May 4, 2010.

"Debtor" means 107 East 25th Street, LLC.

"Disclosure Statement" means this disclosure statement relating to the Plan filed by the Debtor pursuant to section 1125 of the Bankruptcy Code, either as initially filed or as it may be altered, amended or modified as permitted by law.

"Disputed Claim" means any claim or portion of a claim regarding which either the Debtor or other party has filed a pleading, motion or other paper (regardless of how such is denominated) with the Court (a) disputing the correctness of the amount, priority, secured status or other matter regarding the claim or portion of the claim or (b) seeking disallowance of all or a portion of the claim, and which has not been fixed by a Final Order.

"Distribution Account" means the account or accounts established by the Debtor pursuant to section 7.1 of the Plan.

"Effective Date" means the fifteenth day after the Confirmation Date; unless prior to that date, the effect of the Confirmation Order is stayed, in which case the Effective Date shall be the fifteenth day following the termination of such stay.

"General Claim" means any prepetition claim against the Debtor which is unsecured, not entitled to priority under the Bankruptcy Code and not otherwise classified in the Plan.

"Executory Contract" means any contract or unexpired lease to which the Debtor is a party and which is executory within the meaning of section 365 of the Bankruptcy Code; except that a lease of personal property whose lessor holds a Secured Claim is <u>not</u> an Executory Contract.

"Final Order" means an order or judgment, the operation or effect of which has not been stayed, and as to which order or judgment (or any revision, modification or amendment thereof)

11

the time to appeal or seek an appeal or review has expired, and as to which no appeal, petition for review or motion for leave to appeal has been taken or made or is pending.

"Plan" means the Plan of Reorganization dated April ___, 2010, either in its present form or as it may be altered, amended or modified as permitted by law.

"Proceeds" means the net amount, in whatever form, received by the Debtor from the sale or other disposition of property after payment of all expenses (including any professional fees) associated with such sale or disposition.

"Professional" means any entity retained or to be compensated pursuant to sections 326, 327, 328, 330 or 331 of the Bankruptcy Code.

"Pro Rata" means, with respect to a distribution to a holder of a claim, a payment equal to (A) the total amount available for distribution multiplied by (B) the amount of such holder's claim divided by (C) the total amount of claims (both Allowed and Disputed) to receive a distribution from a particular source of funds (A x B ÷ C).

"Real Property" means the land and buildings located at 107 East 25th Street, Baltimore, MD 21218, titled in the name of the Debtor.

"Secured Claim" means any claim secured by a lien, mortgage, security interest, or other encumbrance on property of the Debtor, but only to the extent of the value of the Debtor's interest in property securing such claim, and only to the extent that such lien, mortgage, security interest or other encumbrance is not void or voidable under applicable state or federal law, including the Bankruptcy Code, or subject to setoff under section 553 of the Bankruptcy Code. Classification of a claim in this Plan as a "Secured Claim" is not an admission or representation that the holder of such claim actually holds a Secured Claim. Such classification merely defines the treatment of the Secured Claim should it be found to exist. However, classification in this Plan as other than a Secured Claim shall conclusively exclude such claim from treatment as a Secured Claim. "Secured Claim" includes the claim of a lessor under a lease of personal property if (a) the lessor agrees to treatment of its claim as a Secured Claim, (b) the lessor has filed a proof of claim asserting a secured claim, (c) the Debtor obtains an order of the Court recharacterizing the personal property lease as a secured financing transaction, or (d) the Plan treats the lessor's claim as a Secured Claim.

"Tax Claim" means an unsecured claim for taxes owing to a governmental entity entitled to priority pursuant to section 507 the Bankruptcy Code.

"Unclassified Claim" means any claim belonging to a class of claims not requiring designation pursuant to section 1123(a)(1) of the Bankruptcy Code.

Unless otherwise defined herein, the terms used in the Plan shall have the meaning(s) ascribed to them in the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.